J-A25020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
         v.   :
  :
  :
  :
JAMES NEISSER   :
  :
         Appellant   :   No. 1121 EDA 2017

Appeal from the Judgment of Sentence November 18, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004150-2014

BEFORE: PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY PANELLA, J.:         **FILED APRIL 22, 2019**

Appellant, James Neisser, challenges the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his convictions for burglary and related offenses. After careful review, we affirm in part, vacate in part, and remand for a new sentencing hearing.

The trial court recounted the facts of this case as follows:

On January 2, 2014, at approximately 9:30 a.m., complainant heard her husband engaged in a heated conversation with Appellant outside of complainant's home located on the 12000 block of Rambler Road in Philadelphia, PA. Complainant's husband and Appellant were acquainted with each other as they had grown up together in the same neighborhood. After this confrontation, complainant's husband left for work, leaving complainant and her two minor children in the house alone. This court notes that the record reveals that both young children have special needs.

At approximately 10:00 a.m., complainant was in the family room, located on the first floor of the house, watching television with her son, who has a brain injury, while her daughter was asleep in a bedroom located on the second floor of the house. Complainant

heard noises similar to "shuffling of feet" and noticed a shadow in her kitchen. Complainant believed that the sounds were caused by her daughter, whereupon she inquired loudly about what her daughter was doing. However, complainant's daughter never offered a response. Complainant then investigated the rooms located on the upper floor of the house, but returned downstairs when she discovered that her daughter was sound asleep upstairs and that there was nothing suspicious.

Upon her return downstairs, complainant again heard footsteps resonating from the upper floor of the house. The complainant returned upstairs to conduct a more thorough search of the rooms on the second floor. When the complainant entered her bedroom, she noticed Appellant, dressed in a red hoodie and red sweatpants, attempting to hide under the bed. Complainant became worried for her safety as she knew that her husband kept a knife under the bed. When complainant inquired as to Appellant's uninvited presence in her house, Appellant stated that the husband had allowed him to be at the house. Complainant repeatedly told Appellant to leave her house, but Appellant sat on the steps inside of her house and refused to leave. When Appellant refused to leave the house, complainant called 9-1-1.

Subsequently, Appellant fled the house, running across the street to complainant's neighbor. When police officers arrived at complainant's house, complainant indicated that Appellant had burglarized the home, whereupon she pointed out Appellant as he attempted to enter into his motor vehicle. Subsequent to complainant identifying Appellant as the man who had entered her home uninvited, police officers placed Appellant in handcuffs and led him away from the vehicle he was attempting to enter.

Prior to the officer placing Appellant in the police car, Appellant requested to change his clothing as he had defecated in his pants. The police officer led Appellant to Appellant's sister's residence across the street, whereupon the officer was preparing to allow Appellant to change his clothes inside the residence's bathroom. However, before allowing Appellant to enter the bathroom by himself without the watchful eye of the police, the officer conducted a cursory safety pat down of Appellant's clothing in order to search for any potential weapons. Pursuant to this search, the officer discovered a bracelet, later identified as a bracelet belonging to complainant's husband.

Trial Court Opinion, filed 10/25/17, at 4-6 (citations omitted).

Appellant filed a motion to suppress, which was denied. He also filed a motion to dismiss, pursuant to Pa.R.Crim.P. 600. The court denied this motion as well. Appellant proceeded to a jury trial, where he was convicted of burglary, criminal trespass, and theft by unlawful taking.[1] The court deferred sentencing until receipt of a pre-sentence investigation report and a mental health evaluation. Prior to sentencing, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 704, which was denied. Ultimately, the court sentenced Appellant to a mandatory term of 10–20 years' incarceration, based on its finding that Appellant was a second strike offender pursuant to 42 Pa.C.S.A. § 9714(a)(1). Appellant filed an unsuccessful motion for reconsideration of his sentence, before ultimately filing a timely notice of appeal. This appeal is now before us.

Preliminarily, we must address issues related to Appellant's concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On April 12, 2017, the court ordered Appellant to file the statement within 21 days. Instead, Appellant informed the court he had yet to receive the notes of testimony from his trial, and requested an extension. The court granted two extensions. The latter extension gave Appellant until July 21, 2017 to file his statement.

Appellant actually filed his statement on August 4, 2017. Appellant avers

---

[1] 18 Pa.C.S.A. §§ 3502(a); 3503(a)(1); and 3921(a), respectively.

he believed the initial extension was meant to provide him with 21 days to file his statement from the date he received the notes of testimony. He claims he did not receive the orders granting subsequent extensions, and that the notes of testimony were provided to his counsel on July 17, 2017. He argues his statement was therefore timely, having been filed within 21 days of July 17.

We note the record does not state whether notice was provided for the trial court's extension orders. While the order requesting that Appellant file a Rule 1925(b) statement expressly states service was made on Appellant's counsel, the orders granting extensions do not state whether service was made. We cannot find waiver of Appellant's issues where the record does not clearly establish that notice was provided for the relevant orders. **See Commonwealth v. Williams**, 959 A.2d 1252, 1255-1256 (Pa. Super. 2008). Therefore, we will address the issues on their merits.

Appellant first challenges the trial court's denial of his motion to dismiss, based on his allegation that his speedy trial rights were violated.

"Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). We evaluate Rule 600 issues by considering whether the trial court abused its discretion. **See Commonwealth v. Robbins**, 900 A.2d 413, 415 (Pa. Super. 2006).

> Our scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court. We must view the facts in the light most favorable to the prevailing party.

*Id*. (citation omitted).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Hunt*, 858 A.2d 1234, 1239 (Pa. Super. 2004) (*en banc*) (citation omitted).

The first step in conducting a Rule 600 analysis is to calculate the "mechanical run date." *Commonwealth v. Lynn*, 815 A.2d 1053, 1056 (Pa. Super. 2003). "The mechanical run date is the date by which the trial must commence under Rule 600. It is calculated by adding 365 days … to the date on which the criminal complaint is filed." *Id*. (citation omitted). If a defendant is not brought to trial until after the mechanical run date, and files a Rule 600 motion to dismiss, "the court must assess whether there is excludable time and/or excusable delay." *Hunt*, 858 A.2d at 1241 (citations omitted). Excludable time consists of any periods after the filing of the criminal complaint during which the defendant was unavailable, including any continuances requested by the defendant. *See* Pa.R.Crim.P. 600(C)(2); Rule 600 *Comment*. The amount of excludable time is added to the mechanical run

date to arrive at an adjusted run date. **See Commonwealth v. Ramos**, 936 A.2d 1097, 1102 (Pa. 2007).[2]

In contrast, excusable delay is a delay not caused by the defendant, but for which the Commonwealth has established, by a preponderance of the evidence, that it acted with due diligence. **See Commonwealth v. Selenski**, 994 A.2d 1083, 1089 (Pa. 2010). "Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." **See id**. (citation omitted). "[W]here a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable." **Commonwealth v. Mills**, 162 A.3d 323, 325 (Pa. 2017).

Here, the criminal complaint was filed on January 2, 2014. Without any excludable time, the mechanical run date would therefore have been January 2, 2015. However, there are several instances of excludable time and excusable delay. First, 58 days are excusable delay (from January 17, 2014 to February 18, 2014 and March 13, 2014 to April 8, 2014) due the court's failure to have Appellant brought in from the local jail. Second, 4 days are

---

[2] The language of the new version of Rule 600, effective at the time the Commonwealth filed the criminal complaint against Appellant, focuses on delays caused by the Commonwealth through the failure of due diligence. **See** Pa.R.Crim.P. 600(C)(1). As such, the terms "excludable time" and "excusable delay" are arguably no longer explicitly relevant to the calculation of an adjusted run date. We utilize them here merely to clarify those periods for which the Commonwealth bore the burden of establishing due diligence.

excludable time (from June 6, 2014 to June 10, 2014) due to a defense request for discovery. Third, 246 days are excusable delay (from June 10, 2014 to February 11, 2015) due to court scheduling where the Commonwealth was ready for trial. Fourth, 125 days were excusable delay (from July 8, 2015 to November 10, 2015) where a Commonwealth witness was ill and could not testify when called. Fifth, 2 days were excludable delay (from November 10, 2015 to November 12, 2015) due to the court being involved in another jury trial. Finally, 118 days were excusable delay (from November 12, 2015 to March 9, 2016) due to court scheduling where the Commonwealth was ready for trial.

Appellant began trial on March 9, 2016, 797 days after the complaint was filed. However, 553 days were either excludable time or excusable delay. After these modifications, the includable time subject to Rule 600 time limits was 244 days, well within the 365 days allowed. Appellant's speedy trial rights were not violated. Therefore, this issue is due no relief.

Appellant also challenges the sentencing court's determination that he is a second strike offender, subject to the mandatory minimums of 42 Pa.C.S.A. § 9714(a)(1).

A challenge to the application of the two strikes provision is a question of statutory construction, which we review *de novo*, and for which our scope of review is plenary. **See Commonwealth v. Samuel**, 961 A.2d 57, 60-61 (Pa. 2008). When interpreting a statute, this court must determine the legislative intent underlying the statute. **See id**. "A statute's plain language

generally provides the best indication of legislative intent." ***Commonwealth v. McCoy***, 962 A.2d 1160, 1166 (Pa. 2009) (citations omitted). "When the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b).

Section 9714(a)(1) provides a mandatory minimum sentence of ten years for a person previously convicted of a "crime of violence." In the statute, burglary as currently defined by 18 Pa.C.S.A. § 3502(a)(1) is considered a crime of violence. ***See*** 42 Pa.C.S.A. § 9714(g).

However, the current burglary statute is not identical to the burglary statute in effect at the time of Appellant's conviction in 1992. In 1992, the offense was defined as follows:

**§3502. Burglary**

**(a) Offense defined.**—A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

**(b) Defense.**—It is a defense to prosecution for burglary that the building or structure was abandoned.

**(c) Grading.**—

(1) Except as provided in paragraph (2), burglary is a felony of the first degree.

(2) If the building, structure or portion entered is not adapted for overnight accommodation and if no individual is present at the time of entry, burglary is a felony of the second degree.

18 Pa.C.S.A. § 3502(a)-(c) (effective July 1, 1991).

The current version of the statute states burglary occurs where a person "enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present[.]" 18 Pa.C.S.A. § 3502(a)(1)(i), (ii). Unlike the previous version of the burglary statute, the current version requires both that the building was adapted for overnight accommodations *and* was occupied at the time of the crime.

Because the previous version of the statute did not have these identical elements, a specific finding that the building was adapted for overnight accommodations and a person was present during the crime were not required facts at the time of Appellant's 1992 conviction. However, in **Samuel**, the Pennsylvania Supreme Court determined a sentencing court could make a finding that a defendant's previous conviction for burglary was a "crime of violence" under Section 9714(g), even where the jury had not explicitly made those factual determinations when reaching its conviction. **See Samuel**, 961 A.2d at 65.

Here, the supplemental record, proffered by the Commonwealth at Appellant's sentencing, contains evidence of Appellant's 1992 burglary conviction. The criminal information from the 1992 plea states that Appellant "feloniously did enter a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein. The premises at the time not being open to the public or the actor not being

licensed or privileged to enter." Criminal Information, filed 9/5/91, at 1. In that same document, the separate charge for criminal trespass indicates that Appellant "did defy an order to leave personally communicated to him by the owner of the premises or other authorized person." *Id*.

In addition to the criminal information, the Commonwealth also presented the instant sentencing court with the affidavit of probable cause for the 1991 arrest warrant, the notes of testimony from the preliminary hearing, the mental health evaluation of Appellant that occurred before the 1992 sentencing, the order denying Appellant's motion to withdraw his guilty pleas to burglary and criminal trespass, and the sentencing order. Of these, the affidavit of probable cause, the notes of testimony from the preliminary hearing, and the mental health evaluation indicate the victim was present in 1991 when Appellant committed burglary. The Commonwealth did not present any testimony about the 1992 conviction at Appellant's present sentencing hearing.

Appellant acknowledges the foregoing. However, he maintains the Commonwealth failed to show that, at his guilty plea hearing in 1992, it proffered these facts or that he actually admitted to them. We agree.

The second strike statute dictates that the sentencing court "**shall have a complete record** of the previous convictions of the offender[.]" 42 Pa.C.S.A. § 9714(d) (emphasis added). Though the Commonwealth supplied evidence at sentencing that strongly suggests a person was present during Appellant's 1991 burglary, it failed to provide Appellant's written guilty plea,

notes of testimony from the guilty plea hearing, or a witness who could testify to the proceedings at the hearing.

In the absence of such evidence, we cannot deem the record of Appellant's previous burglary conviction to be "complete." The Commonwealth concedes as much in its brief. *See* Commonwealth's Brief, at 12. ("The Commonwealth's evidence failed to show the actual agreed[-]upon guilty plea facts necessary to establish a Section 9714 burglary.") Consequently, the evidence provided by the Commonwealth is insufficient to show Appellant's 1992 burglary constituted a crime of violence, and therefore a first strike. And, in the absence of an applicable first offense, Appellant cannot be deemed a second strike offender under Section 9714(a)(1).

Therefore, we are constrained to vacate Appellant's judgment of sentence. Though we affirm Appellant's conviction for burglary, we vacate the determination that Appellant is a second strike offender under Section 9714(a)(1), and remand for resentencing.[3]

Judgment of sentence affirmed in part and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[3] As we have granted Appellant relief on this issue, we decline to reach his remaining Section 9714(a)(1) sentencing challenges.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/22/19