**[J-75-2024] [MO: Todd, C.J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 26 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the order of the Superior |
| | : | Court at No. 1480 MDA 2022 dated |
| | : | April 24, 2023 |
| v. | : | reversing/vacating/remanding the |
| | : | Judgment of Sentence of the Adams |
| | : | County Court of Common Pleas, |
| GEORGE THOMAS SHIFFLETT, | : | Criminal Division, at No. CP-01-CR- |
| | : | 0000650-2022 dated September 22, |
| Appellant | : | 2022. |
| | : | |
| | : | ARGUED:  October 9, 2024 |

**DISSENTING OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED:  May 30, 2025**

While the issue is a close one and the majority offers persuasive arguments for the contrary view, I continue to hew to the position reflected in my joinder of Justice Mundy's opinion in support of reversal in *Commonwealth v. Verbeck*, 290 A.3d 260 (Pa. 2023) (*per curiam*) (affirming by evenly divided Court), as well as her dissenting opinion in this case. I remain convinced that although a defendant's previous acceptance of accelerated rehabilitative disposition (ARD) does not constitute a previous conviction, a prior ARD is sufficiently analogous to a prior conviction to likewise warrant exemption from the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013) (the *Apprendi* rule).[1]  "As with a prior conviction, . . . acceptance [of ARD] is a

---

[1] Under the *Apprendi* rule, "any fact that increases the prescribed range of penalties to which a criminal defendant is exposed must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." *Erlinger v. United States*, 602 U.S. 821, 834 (2024) (cleaned up).  "In *Almendarez–Torres v. United States*, 523 U.S. 224 [ ]

matter of public record, it has nothing to do with the facts and circumstances of the present offense, and the associated procedural safeguards . . . are presumed to satisfy due process." *Verbeck*, 290 A.3d at 276 (Mundy, J.) (opinion in support of reversal). I also agree with Justice Mundy that, contrary to the majority's conclusion, 75 Pa.C.S. §3806 is not "facially unconstitutional." Majority Opinion at 25. I write separately to note additional reasons why this is so, and to emphasize the practical consequences of the majority's unwarranted finding of facial unconstitutionality.

There are two types of constitutional challenges, as-applied and facial. "An as-applied constitutional challenge 'does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.'" *Martin v. Donegal Twp.*, 325 A.3d 502, 509 (Pa. 2024), *quoting Commonwealth v. McCabe*, 265 A.3d 1279, 1290 (Pa. 2021). As such, "[i]f an as-applied challenge is successful, the statute may not be applied to the challenger, but [it] is otherwise enforceable." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 700 n.5 (8th Cir. 2021) (internal quotations and citation omitted). On the other hand, "[a] facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *McCabe*, 265 A.3d at 1290 (internal quotations and citation omitted). Importantly, "[a] statute is facially unconstitutional only where no set of circumstances exists under which the statute would be valid." *Commonwealth v. Pownall*, 278 A.3d 885, 904 (Pa. 2022) (brackets omitted), *quoting Clifton v. Allegheny Cty.*, 969 A.2d 1197, 1222 (Pa. 2009). In other words, a statute is facially invalid only if it "is unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). "As these standards plainly reflect, 'facial challenges are

---

(1998), [the Supreme Court] recognized a narrow exception to this general rule for the fact of a prior conviction." *Alleyne*, 570 U.S. at 111 n.1.

generally disfavored.'" *Pownall*, 278 A.3d at 905, *quoting* Clifton, 969 A.2d at 1223 n.37. "They are also 'the most difficult challenge to mount successfully[.]'" *Id.*, *quoting United States v. Salerno*, 481 U.S. 739, 745 (1987). "When a facial challenge is successful, the law in question is declared to be unenforceable in all its applications, and not just in its particular application to the party in suit." *City of Chicago v. Morales*, 527 U.S. 41, 74 (1999) (Scalia, J., dissenting) (emphasis omitted).

The majority acknowledges the difficult-to-meet, no-set-of-circumstances standard for facial challenges at the outset of its analysis. *See* Majority Opinion at 6 ("A statute is facially unconstitutional only where no set of circumstances exists under which the statute would be valid."), *citing Pownall*, 278 A.3d at 904. However, it nonetheless insists this demanding standard is satisfied here pursuant to *City of Los Angeles v. Patel*, 576 U.S. 409 (2015). *See* Majority Opinion at 25-26. On the contrary, *Patel* is readily distinguishable.

In *Patel*, a group of hotel operators and a lodging association brought a facial challenge under the Fourth Amendment to a provision of the Los Angeles Municipal Code requiring hotel operators to disclose guest records to the police on demand without a warrant. In defense of the statute's facial validity, the city of Los Angeles (the City) contended that "facial challenges to statutes authorizing warrantless searches must fail because such searches will never be unconstitutional in all applications." *Id.* at 417. Specifically, the City "point[ed] to situations where police are responding to an emergency, where the subject of the search consents to the intrusion, and where police are acting under a court-ordered warrant." *Id.* at 417-18. The Supreme Court rejected this argument because "its logic would preclude facial relief in every Fourth Amendment challenge to a statute authorizing warrantless searches." *Id.* at 418. "Moreover," the *Patel* Court explained:

the City's argument misunderstands how courts analyze facial challenges. Under the most exacting standard the Court has prescribed for facial challenges, a plaintiff must establish that a "law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 [ ] (2008). But when assessing whether a statute meets this standard, the Court has considered only applications of the statute in which it actually authorizes or prohibits conduct. For instance, in *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 [ ] (1992), the Court struck down a provision of Pennsylvania's abortion law that required a woman to notify her husband before obtaining an abortion. Those defending the statute argued that facial relief was inappropriate because most women voluntarily notify their husbands about a planned abortion and for them the law would not impose an undue burden. The Court rejected this argument, explaining: The "[l]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects. . . . The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Id.*, at 894[.]

Similarly, when addressing a facial challenge to a statute authorizing warrantless searches, the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant. If exigency or a warrant justifies an officer's search, the subject of the search must permit it to proceed irrespective of whether it is authorized by statute. Statutes authorizing warrantless searches also do no work where the subject of a search has consented. Accordingly, the constitutional "applications" that [the City] claims prevent facial relief here are irrelevant to our analysis because they do not involve actual applications of the statute.

*Id.* at 418-19.

Thus, *Patel* did not disavow or relax the no-set-of-circumstances standard for facial challenges. It did not, as the majority appears to suggest, revise the exacting standard for facial invalidity to involve a narrow focus on whether the statute is constitutionally applied to the particular party challenging the law "and similarly situated individuals." Majority Opinion at 27. Rather, the Supreme Court simply clarified that in considering whether a statute is "unconstitutional in all its applications" in accordance with the governing no-set-of-circumstances standard, the word "applications" means "actual applications," circumstances where the statute "actually authorizes" the conduct as

opposed to situations where it is "irrelevant." *Patel*, 576 U.S. at 418-19 (internal quotations and citation omitted). The Supreme Court's determination in *Patel* that the statute there was not susceptible to lawful application did not alter the bedrock principle that where lawful application **is** possible, there can be no finding of facial unconstitutionality.

To restate, *Patel*, which arose in the Fourth Amendment context, held only that "when addressing a facial challenge to a statute authorizing warrantless searches, the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant." *Id*. at 418. Applying this reasoning, the Supreme Court determined the constitutional applications alleged by the City in that case — *i.e.*, exigency, consent, and warrant — were not actual applications precluding a finding of facial unconstitutionality. Under these circumstances, the search would be independently justified regardless of whether it was also authorized by the challenged statute permitting a warrantless search, and the statute itself would "do no work[.]" *Id*. at 419. In these situations, the Court reasoned, the statute would not be applied; it would be irrelevant.

Presently, by contrast, whenever a defendant is subject to a mandatory sentence as a repeat driving under the influence (DUI) offender under 75 Pa.C.S. §3804 based on a prior ARD, Section 3806 is being actually applied.[2] The prior ARD would not constitute a prior offense for purposes of Section 3804 without Section 3806 "doing the work" of defining it as such. In short, this is **not** a situation where "constitutional 'applications' that

---

[2] As noted, the *Apprendi* rule is implicated only when a fact "increases the prescribed range of penalties to which a criminal defendant is exposed." *Erlinger*, 602 U.S. at 834 (internal quotations, citation, and brackets omitted). There is nothing in Section 3806 increasing the potential penalties faced by criminal defendants. Section 3806 is simply a definitional statute setting forth what may constitute a "prior offense" for purposes of Chapter 38 of the Vehicle Code. The statute providing for enhanced penalties based on prior offenses of DUI is Section 3804, not Section 3806.

[might] prevent facial relief . . . are irrelevant to our analysis because they do not involve actual applications of the statute." *Patel*, 576 U.S. at 419.

Significantly, even assuming Section 3806, in and of itself, prescribes enhanced punishments for defendants, it would not be unconstitutional on its face because there are at least two circumstances in which it may be constitutionally applied. One such circumstance is where a special interrogatory is submitted to a jury in a prosecution for a DUI in which the Commonwealth will be seeking an enhanced sentence under Section 3804 based on a prior acceptance of ARD, and the jury unanimously finds beyond a reasonable doubt that the defendant has previously accepted ARD. To protect against prejudice arising from the jury's exposure to the prior ARD during the trial for the new DUI offense, the special interrogatory can be submitted to the jury post-verdict prior to their dismissal. This procedure would comply with the *Apprendi* rule, which is satisfied when the fact increasing the sentence is "submitted to a jury[] and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. It would also be consistent with Section 3806. Section 3806 provides: "The court shall **calculate the number of** prior offenses, if any, at the time of sentencing." 75 Pa.C.S. §3806(b)(2) (emphasis added). In other words, Section 3806 directs the court to count the number of prior offenses, not determine the existence of such offenses, and to do so "at the time of" sentencing, not "for the first time" at sentencing. The court calculation mandated by Section 3806 can come after a jury's determination of a prior offense via a special interrogatory. Moreover, the use of a special interrogatory in this context would be consonant with this Court's precedent. While we have indicated special interrogatories are generally disfavored in criminal trials, *see Commonwealth v. Samuel*, 961 A.2d 57, 64 (Pa. 2008), we have suggested they may be used to comply with the *Apprendi* rule, *see Commonwealth v. King*, 234 A.3d 549, 566

(Pa. 2020).[3]  As Section 3806 is lawfully applied under the circumstances of a pre-sentence jury factfinding of a prior ARD acceptance in response to a special interrogatory, it is not facially unconstitutional.[4]

Section 3806 is also constitutionally applied under another set of circumstances: where the defendant validly waives the *Apprendi* rule.  As with any constitutional rights, a defendant can waive his rights under *Apprendi*.  *See Blakely v. Washington*, 542 U.S. 296, 310 (2004) ("[N]othing prevents a defendant from waiving his *Apprendi* rights."); *see also Peretz v. United States*, 501 U.S. 923, 936 (1991) ("The most basic rights of criminal defendants are . . . subject to waiver.").  Waivers of *Apprendi* and other constitutional rights are valid and enforceable so long as they are knowing, intelligent, and voluntary.  *See Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient

---

[3] At a minimum, this Court has never categorically proscribed special interrogatories in the *Apprendi* context, and the majority does not purport to do so here where this question is not squarely before us.

[4] Because Section 3806 permits a jury to find beyond a reasonable doubt that a defendant has a prior ARD, it is distinguishable from 42 Pa.C.S. §9718 and 18 Pa.C.S. §6317, the statutes deemed facially unconstitutional in *Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016), and *Commonwealth v. Hopkins*, 117 A.3d 247 (Pa. 2015), the cases cited by the majority in support of its assertion that its finding of facial unconstitutionality here "is entirely consistent with how this Court has addressed *Alleyne* challenges in the past." Majority Opinion at 26.  Section 9718 provided at the time that the statute's "applicability 'shall be determined at sentencing,' with factual matters being resolved by the sentencing court 'by a preponderance of the evidence.'" *Wolfe*, 140 A.3d at 653, *quoting* 42 Pa.C.S. §9718(c) (subsequently amended).  Similarly, Section 6317 provided: "[t]he applicability of this section shall be determined at sentencing.  The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine by a preponderance of the evidence if this section is applicable." *Hopkins*, 117 A.3d at 251, *quoting* 18 Pa.C.S. §6317(b).  Thus, the statutes at issue in *Wolfe* and *Hopkins* improperly mandated a court determination under a preponderance standard; they did not allow for jury factfinding beyond a reasonable doubt.  Section 3806, on the other hand, allows for this procedure, thereby complying with the *Apprendi* rule.  The majority's reliance on *Wolfe* and *Hopkins* is misplaced.

awareness of the relevant circumstances and likely consequences."). Indeed, the majority recognizes as much. *See* Majority Opinion at 22-23. Accordingly, it is possible for defendants to validly waive their rights under the *Apprendi* rule at the time they accept ARD. In fact, the OAG advises "a total of at least 19 Pennsylvania counties require such a waiver." OAG's *Amicus* Brief at 9. Under these regularly recurring circumstances, in which defendants knowingly, intelligently, and voluntarily waive their rights under the *Apprendi* rule upon acceptance of ARD, there is no constitutional violation when the ARDs are later treated as prior offenses under Section 3806. Having validly waived their rights under *Apprendi*, the defendants in these cases have no cause to complain their voluntarily abandoned rights have been violated. For this reason too, Section 3806 is not facially unconstitutional.[5]

Of course, Shifflett does not fall into either the waiver or jury factfinding categories. He falls into a third category, for defendants who entered ARD without explicitly waiving *Apprendi* and who never had the fact of the ARD submitted to a jury.[6] It is defendants

---

[5] The majority insists "such a rationale would preclude facial relief in every Sixth Amendment *Apprendi* challenge." Majority Opinion at 26. That may be true, but only because, if *Apprendi* were validly waived in every case, there would be no conceivable constitutional problem warranting a facial remedy. This strikes me as a virtue, not a vice. In any event, facial relief is supposed to be vanishingly rare. This is precisely what our precedent expects and demands. *See Pownall*, 278 A.3d at 905 (facial challenges are "generally disfavored" and are "the most difficult" challenges "to mount successfully") (citations omitted).

[6] The rephrased question we agreed to consider expressly acknowledged Shifflett does not fall into the category involving defendants whose ARD was submitted to a jury. *See Commonwealth v. Shifflett*, 316 A.3d 616, 617 (Pa. 2024) (*per curiam*) ("[I]s it unconstitutional to consider an acceptance of ARD as a prior offense for sentencing purposes **without the procedural protections afforded by *Alleyne***, *i.e.*, a prior offense can only be determined by a jury by proof beyond a reasonable doubt?") (emphasis added). Perhaps for that very reason, in his principal brief Shifflett did not even ask for the sweeping relief the Court now affords. Instead, the single passing reference he made to facial challenges appears in a footnote in his reply brief, and only in response to the OAG's position. *See* Reply Brief at 6 n.4.

who fall into this category, and this category alone, whose *Apprendi* rights are violated by Section 3806 under the majority's rationale. That the particular facts here do not implicate a circumstance where Section 3806 is constitutionally applied is not "irrelevant" to the proper disposition. Majority Opinion at 26. Rather, it is the very point. Even if the majority were correct about the *Apprendi* rule's applicability here, that would simply mean Section 3806's "application to a particular person under particular circumstances deprived that person of a constitutional right." *Donegal Township*, 325 A.3d at 509. That is an as-applied holding, not a facial one.

I am concerned the majority's mistaken finding of facial unconstitutionality may imperil the viability of ARD in Pennsylvania. Again, ruling a statute unconstitutional on its face renders it unenforceable in all its applications. *See Bucklew*, 587 U.S. at 138. The result of today's ruling will be that in all cases, regardless of whether there has been a jury finding of a prior acceptance of ARD or a valid waiver of the *Apprendi* rule, a prior ARD acceptance can never constitute a prior offense under Section 3806. This, in turn, will mean a previous ARD acceptance will never be able to serve as a sentencing enhancer under Section 3804, as our General Assembly clearly intended. There will no longer be a statutory basis for imposing a mandatory minimum sentence under Section 3804 based on a prior acceptance of ARD. And without statutory authorization for a particular mandatory minimum sentence, it cannot be imposed. *See Commonwealth v. Leverette*, 911 A.2d 998, 1001 (Pa. Super. 2006) ("If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction."). Hence, as a consequence of the majority's decision, defendants will never face mandatory minimum sentences under Section 3804 based on their prior acceptance of ARD.

This state of affairs will likely lead district attorneys across the Commonwealth to submit cases for ARD less frequently, if at all. *See Commonwealth v. Lutz*, 495 A.2d 928,

931 (Pa. 1985) ("The district attorney's utilization of ARD is optional[.]"). ARD represents a bargain between the district attorney and the defendant whereby the district attorney agrees to forgo criminal prosecution in exchange for the defendant's rehabilitation. From the district attorney's perspective, it is critical to the bargain that the defendant faces mandatory incarceration if he reoffends. The mandatory prison time incentivizes the defendant to hold up his end of the deal, to rehabilitate successfully and not recidivate. If mandatory imprisonment is taken off the table, many district attorneys will likely conclude the risks of recidivism, and the attendant risks to society, are too great, and decline to offer ARD at all.

This is no mere hypothetical possibility. In *Commonwealth v. Chichkin*, the Superior Court held "that portion of 75 Pa.C.S. §3806(a), which statutorily equates a prior acceptance of ARD to a prior conviction for purposes of subjecting a defendant to a mandatory minimum sentence under Section 3804, is unconstitutional." 232 A.3d 959, 968 (Pa. Super. 2020). *Chichkin* was subsequently overruled by *Commonwealth v. Richards*, 284 A.3d 214 (Pa. Super. 2022) (*en banc*), and *Commonwealth v. Moroz*, 284 A.3d 227 (Pa. Super. 2022) (*en banc*). However, the Pennsylvania District Attorneys Association (PDAA) informs us that "[w]hile the holding of *Chichkin* was in effect, several counties decided not to offer ARD for DUI offenses for some period of time after, and at least one county (Union County) did not until *Chichkin* was overturned." PDAA's *Amicus* Brief at 10; *see id.* at 12 ("*Chichkin* caused District Attorneys throughout the Commonwealth to consider either eliminating or restricting ARD for first-time DUI offenders."). Certainly, this Court's final word on the issue today can be expected to be more impactful than *Chichkin*.[7]

---

[7] Indeed, counsel for the Commonwealth indicated at oral argument that the Court's facial invalidation of Section 3806 might sound the death knell for ARD in Pennsylvania. When asked to opine about "how District Attorneys would handle future cases if we declare the statute is unconstitutional, and you can't consider ARD as a prior offense[,]" counsel

ARD is an important and beneficial program, not least for defendants. The many positive impacts of ARD include allowing deserving first-time offenders to avoid convictions and criminal records, conserving finite judicial resources, reducing costs to both sides, and promoting rehabilitation and accountability. It would be unfortunate indeed if ARD were to fall into disuse. But I fear this may well be the upshot of the majority's conclusion that Section 3806 is unconstitutional on its face and cannot be applied under any circumstances, including when the defendant's *Apprendi* rights have been fully complied with via a jury finding beyond a reasonable doubt or validly waived.

I respectfully dissent.

---

responded, "depending on how the decision was written, if a waiver and stipulation w[ere] sufficient," — *i.e.* if the Court were to hold the statute unconstitutional only as applied, as Shifflett requested and our grant of allowance of appeal suggested — "honestly I think things go on as they normally did." Oral Argument, 10/9/24, at 3:23:59-3:24:40 (available at https://pcntv.com/pennsylvania-politics-and-policy/pa-courts/pa-supreme-court/). But, counsel continued, "[i]f the Court completely says ARDs in any fashion [or] any form cannot be used as a recidivist statute" — *i.e.*, if the Court declares the statute unconstitutional on its face, as the majority does here — "I would guess, if I had to guess, probably a good portion of the counties don't offer ARD anymore for DUIs." *Id*. at 3:24:40-3:25:00.